**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PETER FRAZZETTO, JR.,**

       **Plaintiff,**

**-vs-**                                              **Case No. 6:11-cv-1945-Orl-28KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Peter Frazzetto, Jr., seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration ("SSA"). Doc. Nos. 16, 17, 18.

**I.    PROCEDURAL HISTORY.**

Frazzetto applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et seq.* (sometimes referred to herein as the Act). R. 48-51. He alleged that he became disabled on January 1, 1987. R. 48. Frazzetto's application was denied initially, on reconsideration, by an administrative law judge ("ALJ") and by the Appeals Council. R. 4-6, 28, 37, 39-41B. On review, this Court found that the Commissioner erred by

failing to consider the opinion of Douglas R. Budde, M.D., Frazzetto's psychiatrist. Accordingly, the Court reversed the decision of the Commissioner and remanded the case for further proceedings. Case No. 6:07-cv-948-Orl-28KRS, Doc. Nos. 18, 20.

On remand, Frazetto presented letters from individuals who had observed his condition at various times. R. 562-69. The SSA also obtained updated records from the Veterans Administration ("VA"). R. 570-664, 668A. Additionally, a report of examination of Frazzetto by Scott Fairchild, a psychologist, was submitted, and a statement was received from Lantie Quinones, M.D. R. 665-67, 668A. Finally, a hearing was held at which a medical expert and a vocational expert ("VE") testified. R. 669-724.

After review of all of the evidence, the ALJ determined that Frazzetto was insured through December 31, 1990, and that he had not engaged in substantial gainful activity since the alleged disability onset date. R. 471-72. The ALJ found that Frazzetto suffered from post-traumatic stress disorder ("PTSD"), which was a severe impairment but which did not meet or equal any listed impairments. R. 472.

The ALJ concluded that Frazzetto had no exertional impairments but that he "could have occasional close interpersonal interaction with public and supervisors." R. 473. Frazzetto could not perform any of his past relevant work. As of the date last insured, the ALJ concluded that Frazzetto could perform the jobs of cleaner and warehouse worker, both of which are unskilled positions. R. 483. Therefore, the ALJ concluded that Frazzetto was not disabled. R. 484.

Frazzetto sought review of this decision by the Appeals Council, which found no basis to assume jurisdiction. R. 454-57. Frazzetto now seeks review of the ALJ's decision in this Court.

**II.      JURISDICTION.**

Plaintiff having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

**III.     STATEMENT OF FACTS.**

After a complete review of the record, I find that the earlier Report and Recommendation (R. 537-46), the parties' memoranda and the ALJ's decision provide an adequate statement of the relevant facts. Accordingly, I will only summarize pertinent portions of the record to protect Frazzetto's privacy as much as possible.

A.      <u>Personal Information and Work History</u>.

Frazzetto was born in 1949. R. 48. He served in the Army from 1968 through 1970, including spending fourteen months in combat in Vietnam. During that time, he saw a lot of death and killing. R. 309-10. He was discharged in May 1970. R. 311.

After he returned to the United States, he had problems with anger and social problems. He isolated himself from others. R. 310. He had difficulty responding to supervision at work. R. 310-11. He told the VA on June 25, 1981, that he had been fired from a job due to insubordination. R. 353.

Thereafter, he was self employed as a house painter. R. 54, 689-70. Frazzetto told a VA treatment provider in December 1998 that he would not "work for 'less' than he should be paid as a painter and therefore chooses not to work." R. 236.

Frazzetto owned a clothing store from 1984 through January 1987. R. 54. He worked as the buyer and had employees running the store. R. 689, 710-14. He described himself as a "good

buyer." R. 689. He would not open the store if his employees were not there to deal with customers, and he was not good with customers when he had to deal with them. R. 692-93. He sold the business when environmental issues at the beach where the store was located caused it to make very little money. R. 689.

He began working as a house painter again after the store closed. He described his work as slow but good. R. 690. He indicated that he was fine so long as no one was standing over him giving him a hard time. *Id.*

In October 2007, he was studying to be a personal trainer and it appears that he worked in that capacity as of 2009. R. 611, 615.

Frazzetto described himself as "not a completely unsociable person." R. 695. However, if someone raised their voice or demanded things of him, it bothered him. R. 696. Frazzetto's friends described him as someone who could not take criticism or communicate with others in a civil manner. R. 562, 565, 567, 569. He could explode into violent rages at anytime. R. 563.

B.   Medical Records.

Frazzetto began seeking treatment at the VA in May 1971. R. 311; *see also* R. 335. A VA treatment note dated May 7, 1971, reads in part as follows:

> "[Frazzetto] talks incessantly – has flight of ideas: i.e. relates events in Vietnam; then switches to being mal-treated by a policeman when picked up for drug suspicion, then talks about nervousness, etc. Says that for the past year he has exhibited poor impulse control. He clenches his fists and says he really enjoyed killing in Vietnam. When wife wakes him up in the morning, he almost physically attacks her & at her suggestion is seeking help.

R. 403.

VA records from 1971 through 1985 reflect that Frazzetto was prescribed Seconol, Valium and Xanax due to an anxiety disorder and anger. R. 376, 378, 441, *see also* R. 355-447. Treatment

notes reflect that Frazzetto's mental condition improved with use of medication. *See, e.g.,* R. 415, 426, 429, 434. Nevertheless, from time to time he reported that he was easily aggravated and had difficulty sleeping through the night, and treatment providers observed that he was occasionally tense and anxious. *see, e.g.,* R. 345, 360-61, 367, 375, 378, 380, 393, 397, 400, 402-03, 429, 435; *see also* R. 359. In February 1984, Anthony A. Pelosi, M.D., wrote that Frazzetto would require continued treatment for his psychiatric condition. R. 440.

There are no records of treatment from 1985 through 1995. *See* Doc. No. 21 at 12 ("[I]t has long been conceded by all parties to this matter that there are no contemporaneous 'treatment notes' from Mr. Frazzetto's onset of January 1987 to the expiration of his insured status at the end of December 1990.").

The VA examined Frazzetto for PTSD in October 1997. R. 449-53. The examination report recounts Frazzetto's description of the problems he had had holding a job since being discharged by the Army. He reported that he could not stand being yelled at and ordered around. Although he held a job with the Long Island Railroad for seven to eight years, he was eventually fired for insubordination. R. 450. The diagnosis was PTSD, with a present global assessment of functioning ("GAF") score of 41.[1] R. 453.

Douglas R. Budde, M.D., a board certified psychiatrist, began treating Frazzetto through the VA at least as of January 2002. R. 140. In January 2002, Dr. Budde opined that Frazzetto suffered from chronic and severe PTSD. R. 141. He assessed Frazzetto with a GAF score of 40. R. 140-41. In later treatment notes, Dr. Budde opined, after reviewing Frazzetto's medical records, that

---

[1] The Global Assessment of Functioning (GAF) scale is used to report an individual's overall level of functioning. HAROLD I. KAPLAN, M.D. & BENJAMIN J. SADOCK, M.D., SYNOPSIS OF PSYCHIATRY 299 (8th ed. 1998) (hereinafter *Synopsis of Psychiatry*). A GAF rating between 41 and 50 reflects: "Serious symptoms (eg, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (eg, no friends, unable to keep a job). *Id.*

Frazzetto had suffered from PTSD for some time, even though that was not the diagnosis originally used. R. 304. He wrote as follows:

> It is clear that the pt suffers from a severe and chronic condition, PTSD now and that this was caused by the intense and sustained traumatic events during combat in Vietnam. [T]he combat exposure was in 1969 to 1970. The pt had clear symptoms consistent with ptsd in the 1970's, then in the 1980's and through to the present. . . . Based on my knowledge of the pt, the history of his case, I believe that this pt condition worsened to the point that by 1981 it was sufficiently severe to keep him from maintaining meaningful employment.

R. 305A. In other treatment notes, Dr. Budde cited to some of Frazzetto's medical records from the early 1970s supporting his opinion. *E.g.,* R. 613, 651.

Steven L. Wise, Psy.D., and Alejandro F. Vergara, M.D., reviewed Frazzetto's records at the request of the SSA in 2005. Each of these physicians found insufficient evidence upon which to render a mental RFC assessment. R. 279, 290.

In 2004, the VA found that Frazzetto was 100% disabled effective August 15, 1996 as a result of PTSD. R. 103-04.

On July 19, 2010, Dr. Fairchild examined Frazzetto and administered psychological tests. Dr. Fairchild concluded that Frazzetto's PTSD was chronic and severe with a GAF score of 38.[2] R. 666. He opined as follows: "Mr. Frazzetto's deteriorating ability to maintain safe and effective self control and relations with others renders him 100% unemployable and disabled without the likelihood of rehabilitation." *Id.*

On July 26, 2010, Lantie Quinones, M.D., a physician with the VA, wrote a letter indicating that Frazzetto did not receive appropriate treatment from the VA in the 1980s and, therefore, "he

---

[2] A GAF score of 31 to 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . . ." *Synopsis of Psychiatry* at 299.

was NOT absent from treatment from the VA . . . . He was instead receiving ineffective and powerful drugs which were not the right treatment for his PTSD." R. 668A.

   C.   Medical Expert Testimony.

Larry Benovitz, M.D., a board certified psychiatrist, reviewed Frazzetto's records and listened to testimony at the most recent ALJ's hearing. R. 497-500, 678. Dr. Benovitz opined that Frazzetto suffered from PTSD before the date he was last insured. R. 679. He could not identify support in the record for Dr. Budde's opinion. R. 681-82. He acknowledged that, in the absence of medical records, he would look at personal relationships, employment history and the like to determine Frazzetto's functional ability during the alleged disability period. R. 682.

> After listening to Frazzetto's testimony, Dr. Benovitz testified as follows:
>
> I did not hear anything that would be of a severe nature based on those functional issues . . . that he was talking about. Nothing to me sounded to be significant, that this is somebody who suffered with severe symptoms of PTSD during this period of time. . . .
>
> He may have had PTSD, but he was able to function fairly well. . . . I suggested moderate interaction with supervisors and public. I mean, limited occasional interaction with supervisors and public.

R. 702-03. Dr. Benovitz indicated that he did not hear anything indicating that Frazzetto had any limitations in activities of daily living or concentration, persistence or pace during the alleged disability period. R. 705.

       D.      <u>VE Testimony</u>.

The ALJ asked the VE to assume an individual with no physical limitations who could have only occasional interaction with the public and supervisors. The VE responded that this person could perform the job of cleaner or warehouse worker, both of which are medium exertional, unskilled jobs. R. 717-18.

## IV. STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A. A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits. 42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits. In sum, an ALJ must apply the following criteria, in sequence:

(1)     Is the claimant presently unemployed?

(2)     Is the claimant's impairment severe?

(3)     Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?

(4)     Is the claimant unable to perform his or her former occupation?

  (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4). An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability. A negative answer leads to a finding of "not disabled." *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982) (internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). When the SSA's decision is supported by substantial evidence, the court will affirm, even if the

court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**V.    ANALYSIS.**

Frazzetto contends that the ALJ erred by failing to credit the opinions of Dr. Budde and Dr. Quinones, both of whom treated him. He also argues that the ALJ erred by failing to credit his testimony and the statements of his friends. These are the only issues I will consider.[3]

The ALJ in this case was faced with a formidable task. She was required to determine whether Frazzetto was disabled on or before December 31, 1990, nearly twenty years before she rendered her decision. It is undisputed that there are no medical records during the alleged disability period. Accordingly, the ALJ "secured testimony from the claimant, the medical expert and reviewed the various personal statements given by claimant's friends." R. 478. She also thoroughly

---

[3] The parties were advised in the Scheduling Order that issues not specifically raised would be considered to have been waived. Doc. No. 19 at 2.

reviewed the record, as shown by her detailed decision. The Court must affirm the ALJ's decision if it is supported by substantial evidence and correct application of the law, even if the Court might have decided the matter differently.

  A. <u>Opinions of Treating Physicians</u>.

  Frazzetto's first argument is that the various reasons the ALJ gave for giving little weight to the opinions of Dr. Budde and Dr. Quinones are insufficient because the law requires that great weight be given to the opinion of treating physicians. However, as Frazzetto acknowledged, the law also permits the ALJ to give less or no weight to opinions of even treating physicians if good cause exists to do so, such as when an opinion is wholly conclusory or not accompanied by objective medical evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997), and *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)).

  As to Dr. Budde's opinion, the ALJ correctly observed that he did not cite medical documentation to support his opinion. The record reflects only citations to reports from the early 1970s in his treatment notes. The ALJ noted that Dr. Budde had not treated Frazzetto during the alleged disability period and, therefore, that his opinion was "not based on his relationship with [Frazzetto] during the period assessed." R. 480.[4] Dr. Benovitz concurred with the ALJ's finding that Dr. Budde's opinion was not supported by the medical records.

  As to Dr. Quinones' opinion, the ALJ credited his statement that effective treatment for PTSD may not have been available during the alleged disability period. She correctly noted,

---

[4] The ALJ did not, however, reject Dr. Budde's opinion solely because he did not treat Frazzetto during the period at issue.

however, that this statement did not address the severity of Frazzetto's functional impairments during the relevant period. R. 480.

The ALJ also found that the evidence as a whole undermined the opinions of Drs. Budde and Quinones. Among other things, she correctly observed that Frazzetto had been able to work at various jobs despite his PTSD. She noted that, by his own admission, Frazzetto was good at his work when he was left alone without close supervision. She also considered that the VA found that Frazzetto became permanently disabled as a result of PTSD as of August 1996, after the date he was last insured. Finally, she considered the opinion of Dr. Benovitz who opined, after review of the record and considering Frazzetto's testimony, that there was insufficient evidence to support a finding that Frazzetto had functional limitations that would have prevented him from working during the alleged disability period.

All of these findings, which are supported by substantial evidence in the record, state good cause for failing to give the opinions of Dr. Budde and Dr. Quinones significant weight. Therefore, the first assignment of error is unavailing.

B.   Credibility.

Frazzetto contends that the ALJ's stated reasons for finding his testimony and the statements from his friends to be not completely credible are insufficient to support that conclusion. The argument is, essentially, that none of the information the ALJ relied on to support her conclusion is actually inconsistent with the testimony and written statements.

An ALJ must consider the testimony of the claimant and other observers in rendering her opinion. If the ALJ decides not to credit those statements, she must articulate explicit and adequate reasons for doing do. *See Foote v. Chater*, 67 F.3d 1560, 1562 (11th Cir. 1995). The ALJ correctly followed the law and substantial evidence supports her conclusion.

As noted above, the ALJ made an extraordinarily thorough review of the record. While Frazzetto and his friends indicated that he had difficulty getting along with people, other evidence in the record shows that he could function well with limited interaction with supervisors and the public. Indeed, Frazzetto himself testified that he was not a completely unsociable person. The ALJ correctly found that Frazzetto was able to deal with vendors as a clothing store buyer and customers in his work as a painter. R. 474, 478. She credited the information indicating that Frazzetto could not get along with supervisors and the public by limiting his ability to work to only occasional close interpersonal interaction with public and supervisors. R. 473.

Frazzetto quibbles with way the ALJ stated some of her conclusions and asks the Court to consider each finding in isolation. However, after considering the record as a whole, the ALJ's credibility determination is supported by substantial evidence. Therefore, this assignment of error is also not well taken.

## VI.  RECOMMENDATION.

For the reasons stated herein, I respectfully recommend that the decision of the Commissioner be **AFFIRMED**. I further recommend that the Court direct the Clerk of Court to

enter judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully Recommended this 28th day of November, 2012.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE